HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES FIRE INSURANCE COMPANY et al.,

  Plaintiffs,

  v.

FOSS MARITIME COMPANY,

  Defendant.

CASE No. 2:21-cv-01506-RAJ

ORDER

This matter comes before the Court on Defendant Foss Maritime Company's ("Foss") Motion for Summary Judgment and Dismissal of all Claims, Dkt. # 26, and Plaintiffs' United States Fire Insurance Company, Beazley Insurance Company, Inc., StarStone National Insurance Company, State National Insurance Co., Inc., North of England Protection and Indemnity Association Limited, Atlantic Specialty Insurance Company, Starr Indemnity & Liability Company, Markel Syndicate Management Limited in its capacity as manage agent for Syndicate 3000 at Lloyd's, and Arch Managing Agency, Ltd. as the managing agent for Syndicate 2012 at Lloyd's ("Plaintiffs") Motion for Leave to File a Third Amended Complaint. Dkt. # 32. The parties have not requested oral argument, and the Court finds that it is unnecessary. Having considered the submissions of the parties, the relevant portions of the record, and

ORDER – 1

the applicable law, the Court **GRANTS** Foss's Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Leave to File a Third Amended Complaint.

### I. BACKGROUND

**A.) The Parties**

Plaintiffs are subscribing underwriters to Policy No. AJG-19-056 ("the Policy") that insures O'Hara Corporation ("O'Hara") against certain hull and machinery losses to its vessel F/V ENTERPRISE, O.N. 657383 ("the Vessel"). Dkt. # 23 (Second Amended Complaint) at ¶ 2. On October 19, 2016, O'Hara contracted with Foss to perform repairs to the Vessel, which was located at Foss's shipyard in Seattle, Washington. *Id.* at ¶ 7; *see also* Dkt. # 27 (Declaration of Steve Britton in Support of Foss Maritime Company's Motion for Summary Judgment), Ex. A ("Contract"). Both pages of the Contract (a "Shipyard Customer Work Request" and "Terms and Conditions") were signed by Keith Bruton, O'Hara's fleet manager. Contract at 1-2. In the Contract, Foss is referred to as the "Shipyard," while O'Hara is the "Customer." *Id.* The repair work that Foss was to do included replacing the Vessel's stern tube and bearings and the propulsion shaft arrangement. Dkt. # 23 at ¶ 7.

**B.) The Contract**

The Contract contains several relevant provisions, including a Limited Warranty. It states:

> LIMITED WARRANTY – Shipyard warrants to the party named above ("Customer") (but not to third parties) that the materials sold and work performed hereunder will be free from defects in material and workmanship and conform to applicable express specifications, PROVIDED, HOWEVER, WARRANTIES GIVEN BY THE MANUFACTURER OR SUPPLER OF ITEMS INSTALLED BY SHIPYARD OR GIVEN BY ANY SUBCONTRACTOR SHALL TOTALLY REPLACE SHIPYARD'S WARRANTY WITH RESPECT THERETO. This warranty shall expire six (6) months from the date of completion by the Shipyard of the work described in the above Scope of Work, or upon any earlier sale or transfer of

ORDER – 2

the vessel, engine, or article. Shipyard shall be discharged from all liability for defective workmanship or material or for loss or damage, unless Customer meets both of the following conditions: 1) Customer discloses the same and makes a claim in writing to Shipyard within six (6) months of the date of completion by the Shipyard of the work performed or the earlier sale or transfer of the vessel, engine, or article; and 2) Litigation is commenced within one (1) year after completion by the Shipyard of the work performed or the earlier sale or transfer of the vessel, engine or article.

Contract at 2, ¶ 4 (caps in original). The Contract also includes a disclaimer:

**DISCLAIMER** – SHIPYARD MAKES NO WARRANTY OF ANY KIND, STATUTORY, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, USAGE OR TRADE OR ANY OTHER WARRANTY, EXCEPT FOR THAT LIMITED WARRANTY PROVIDED IN PARAGRAPH 4 HEREOF WHICH IS EXTENDED ONLY TO THE CUSTOMER. ALL WARRANTIES OF SHIPYARD ARE VOIDED IF ANY ARTICLE OR PART THEREOF (1) IS INSTALLED, USED OR SERVICED, OTHER THAN IN CONFORMANCE WITH SHIPYARD'S OR SUPPLIER'S SPECIFICATIONS, MANUALS, BULLETINS OR INSTRUCTIONS, OR (2) HAS BEEN IMPROPERLY INSTALLED, USED OR MAINTAINED.

Contract at 2, ¶ 5 (caps in original). Finally, the Contract includes a paragraph addressing remedies and damages:

**EXCLUSIVITY OF REMEDY, LIMITATION OF DAMAGES** – Shipyard's liability and Customer's exclusive remedy for breach of any warranty or for negligence, strict liability, or otherwise (regardless of legal theory) is limited solely to the replacement or repair at Shipyard's option and designated place of business, or any article or part thereof which is proven to be other than as warranted… SHIPYARD SHALL NOT BE LIABLE UNDER ANY CIRCUMSTANES (INCLUDING BUT NOT LIMITED TO, ANY CLAIM FOR BREACH OF ANY WARRANTY, INCLUDING WARRANTY OF WORKMANLIKE PERFORMANCE, NEGLIGENCE, STRICT LIABILITY OR OTHERWISE) FOR ANY CONSEQUENTIAL, SPECIAL, CONTINGENT OR INCIDENTAL DAMAGES ARISING OUT OF, CONNECTED WITH, OR RESULTING FROM THIS CONTRACT OR THE USE OR OPERATION OF ANY ITEM COVERED OR PURCHASED HEREUNDER, INCLUDING, BUT NOT LIMITED TO,

ORDER – 3

ANY LIABILITY FOR LOSS OF PROFIT OR REVENUE, LOSS OF USE, COST OF SUBSTITUTED EQUIPMENT, DETENTION, DEMURRAGE, TOWAGE, PILOTAGE, OR CLAIMS OF THIRD PARTIES. SHIPYARD SHALL NOT BE HELD LIABLE DIRECTLY OR INDIRECTLY IN CONTRACT, TORT, STRICT LIABILITY, OR OTHERWISE, TO CUSTOMER, THE VESSEL'S OWNERS, CHARTERERS OR UNDERWRITERS FOR ANY INJURY TO THE VESSEL, ITS CARGO, EQUIPMENT, MOVABLE STORES, CREW, OR THIRD PARTIES, OR FOR ANY CONSEQUENCES THEREOF, UNLESS SUCH INJURY IS CAUSED SOLELY BY THE GROSS NEGLIGENCE OF SHIPYARD OR ITS EMPLOYEES AND UNLESS SHIPYARD'S LIABILITY OR THE REMEDY OF SUCH PARTY IN INTEREST FOR SUCH INJURY IS NOT OTHERWISE LIMITED OR DISCLAIMED IN PARAGRAPHS 4 OR 5 HEREOF OR THIS PARAGRAPH 6. IN NO EVENT SHALL SHIPYARD'S AGGREGATE LIABILITY FOR THE WORK DONE UNDER THIS CONTRACT TO ALL PARTIES IN INTEREST EXCEED IN THE AGGREGATE THE SUM OF $300,000.

Contract at 2, ¶ 6 (caps in original). Finally, the Contract states that that it will be "governed and construed in accordance with the general maritime law of the United States, insofar as applicable, and otherwise by the laws of the State of Washington." Contract at 2, ¶ 10.

**C.) Repair of the Vessel**

Repairs to the Vessel were conducted during the winter of 2016-2017 and the Vessel was delivered to O'Hara in January 2017. Dkt. # 23, ¶ 7. The Vessel then returned to its service in the Alaskan commercial fishing industry. *Id.* At some point thereafter, O'Hara submitted a claim under the Policy for damage to various parts of the Vessel. Plaintiffs paid O'Hara $512,699.11 and became subrogated to O'Hara's rights against Foss under the Policy. *Id.* at ¶ 7-8.

In November 2021, Plaintiffs filed the instant lawsuit, Dkt. # 1, and amended their Complaint in December 2021 and February 2022. *See* Dkt. ## 7, 23. Plaintiffs allege that after the repairs, the Vessel "experienced continuous premature failures and/or damage to its propeller, tailshaft, stern tube, stern tube bearings, propulsion shaft arrangement, main

ORDER – 4

engine and other equipment well beyond normal wear and tear, which necessitated extensive repairs." Dkt. # 23 at ¶ 7. Plaintiffs allege that they investigated the damage in 2020, which revealed that it was caused by "[D]efendant's failure to properly install the stern tube and properly align the entire propulsion shaft arrangement… in accordance with the procedures and schematics provided by O'Hara and good industry practice." *Id.*

Plaintiffs assert three causes of action: (1) breach of contract; (2) breach of the warranty of workmanlike performance; and (3) negligence. *Id.* at ¶¶ 9-21. Plaintiffs seek damages in the amount of $562,699.11 (which is the amount Plaintiffs paid to O'Hara under the Policy, as well as O'Hara's $50,000 deductible), an award of pre-judgment interest, and costs and attorney's fees. *Id.* at 5.

On June 24, 2022, Foss filed this Motion for Summary Judgment; Plaintiffs opposed, and Foss filed a Reply. Dkt. ## 26, 30, 31. On August 4, 2022, Plaintiffs filed a Motion for Leave to Amend Complaint, asking the Court to allow it to file a Third Amended Complaint asserting a gross negligence claim. Dkt. # 32. Foss opposed, and Plaintiffs filed a Reply. Dkt. ## 34, 37.

## II.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the

ORDER – 5

opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also, White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. V. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

### III.  DISCUSSION

Foss argues that they are entitled to summary judgment as a matter of law because each of Plaintiffs' claims are barred by the Contract. Dkt. # 26 at 6. Plaintiffs acknowledge that their breach of warranty claim is not actionable because Foss's limited warranty has expired. Dkt. # 37 at 6, n.6. The parties do not disagree as to the general facts outlined in their briefing. Their dispute concerns the interpretation of the Contract and whether the terms bar Plaintiffs' claims as a matter of law. Therefore, the Court will consider Foss's arguments in support of dismissing the remaining two causes of action: breach of contract and negligence.

**A.) Applicable Law**

ORDER – 6

Contracts for ship repair are governed by admiralty law. *Point Adams Packing Co. v. Astoria Marine Constr. Co.*, 594 F.2d 763, 765 (9th Cir. 1979) (citing *New Bedford Dry Dock Co. v. Purdy*, 258 U.S. 96, 99 (1922)). This includes claims regarding vessels undergoing repairs in a drydock. *Crowley Marine Serv., Inc. v. Vigor Marine LLC*, 17 F. Supp. 3d 1091, 1094 (W.D. Wash. 2014) (citing *North Pac. S.S. Co. v. Hall Bros. Marine R. & Shipbuilding Co.*, 249 U.S. 119, 128 (1919)). "When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 22-23 (2004) (citing *Kossick v. United States Fruit Co.*, 365 U.S. 731, 735 (1961)). "Courts, however, may use state law to interpret maritime contracts, provided that it does not clearly conflict with federal maritime law." *DeForge Maritime Towing, LLC v. Alaska Logistics, LLC*, 591 F. Supp. 3d 939, 948 (W.D. Wash. 2022) (citing *Aqua-Marine Constructors, Inc. v. Banks*, 110 F.3d 663, 671 (9th Cir. 1997)). In addition, here, "admiralty law is in agreement with the parties' choice of law provision." *Offshore-Inland Services of Ala., Inc. v. R/V DEEPOCEAN QUEST*, Nos. C06-0183-JCC, C06-1114-JCC, 2007 WL 2908584, at *6 (W.D. Wash. Oct. 2, 2007) (citing *Point Adams Packing Co. v. Astoria Marine Constr. Co.*, 594 F.2d 763, 766 (9th Cir. 1979)). "Basic principles in the common law of contracts readily apply in the maritime context." *Clevo Co. v. Hecny Transp., Inc.*, 715 F.3d 1189, 1194 (9th Cir. 2013) (citing *Kirby*, 543 U.S. at 23).

### B.) Foss Disclaims Liability for Loss or Damage in Paragraph 4

In their Complaint, Plaintiffs allege that Foss "materially and substantially breached the [Contract] through various acts and omissions, including but not limited to, its failure to properly install the Vessel's stern tube and properly align the Vessel's entire propulsion shaft arrangement." Dkt. # 23, ¶ 11. Foss argues that summary judgment is appropriate because the Contract discharges Foss from *all* liability unless the Customer: 1) lodges a complaint in writing within six (6) months, and 2) commences litigation

ORDER – 7

within one (1) year. Plaintiffs counter that the claim and suit time limitations only apply to breach of warranty claims[1] because this disclaimer is included in the paragraph named "LIMITED WARRANTY," and the paragraph does not reference negligence or contract claims or use broad language to encompass those claims.

The Court does not find Plaintiffs' arguments persuasive. Paragraph 4 of the Contract does in fact use broad language to disclaim "all liability for defective workmanship or material or for loss or damage," unless the Customer makes a claim in writing within six months of the completion of the work and commences litigation within one year of completion. Contract at 2, ¶ 4. It is uncontested that O'Hara did not take these steps during the delineated time period. Further, the Court does not find persuasive Plaintiffs' argument that the time limitations provided for in Paragraph 4 apply only to breach of warranty claims because the paragraph is titled "LIMITED WARRANTY." As Foss notes, Plaintiffs provide no authority for their assertion that Paragraph 4's liability disclaimer should be limited by the title of the paragraph. Further, the parties' intent to broadly limit liability is underscored by the language that the parties agreed to: under the Contract, Foss is discharged from "all liability" for "defective workmanship or material" *or* "loss" *or* "damage" unless O'Hara took the required actions within the specified time frame. "Contract terms are to be given their ordinary meaning and whenever possible, the plain language of the contract should be considered first." *Starrag v. Maersk, Inc.*, 486 F. 3d 607, 616 (9th Cir. 2007) (citing *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004)) (quotations omitted). Read as a whole, the plain language is unambiguous—once the specified time frame has passed, Foss is discharged from all liability for any loss or damage. This language bars Plaintiffs' claims.

**C.) Paragraph 6's Broad Exculpatory Clauses Further Disclaim All Liability**

However, even if the limiting language of Paragraph 4 did not apply to Plaintiffs'

---

[1] As noted, Plaintiffs concede that their breach of warranty claim is not actionable.

ORDER – 8

1  breach of contract and negligence claims, Paragraph 6 of the Contract limits Foss's
2  liability under those, and other, legal theories. Foss argues that Paragraph 6, which
3  concerns remedies and damages, provides that Plaintiffs' exclusive remedy for injury
4  under any legal theory is limited to replacement of parts or repair by the Shipyard. Dkt. #
5  26 at 3. Because Plaintiffs have not sought to have Defendant repair the Vessel, Foss
6  argues that the breach of contract claim and claim for damages should be dismissed as a
7  matter of law. *Id.*

8        Plaintiffs counter that repair or replacement is the sole remedy only where loss
9  stems from defective materials and not defective workmanship, as Plaintiffs allege here.
10 Plaintiffs cite to Paragraph 6, which refers to replacement or repair "of any article or part
11 thereof." Paragraph 6 also includes references to "defective item[s]," and "article[s] or
12 part[s]" that have been installed, but not to "workmanship" specifically. In an instance of
13 breach of contract due to defective workmanship, Plaintiffs argue, damages are the
14 appropriate remedy. Dkt. # 30 at 8-9.

15       The Contract provides, "Shipyard's liability, and Customer's exclusive remedy for
16 breach of any warranty or for negligence, strict liability, or otherwise (regardless of legal
17 theory) is limited solely to the replacement or repair… of any article or part thereof
18 which is proven to be other than as warranted." Contract at 2, ¶ 6. Although the
19 Paragraph does not refer to "workmanship," it strains credulity to read the Contract
20 provision indicating that "repair" or "replacement" is the "exclusive remedy" for liability
21 "regardless of legal theory" would specifically exclude defective workmanship. "A basic
22 principle of contract interpretation in admiralty law is to interpret, to the extent possible,
23 all the terms in a contract without rendering any of them meaningless or superfluous."
24 *Starrag*, 486 F. 3d at 616 (citing *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550,
25 555 (5th Cir. 2004)). The Court rejects such a strained interpretation of the Contract.
26 Because the exclusive remedy for breach of contract (whether or not it stems from a

ORDER – 9

claim of defective workmanship) is repair or replacement, and Plaintiffs seek damages (and do not and have not sought repair), their breach of contract claim is barred as a matter of law.

Similar exculpatory language bars Plaintiffs' negligence claim. The Contract provides for damages only in the event of injury caused by gross negligence on the part of the Shipyard and when other portions of the Contract do limit Foss's liability. Contract at 2, ¶ 6. Although the liability disclaimers of Paragraph 6 are broad and seem to shield Foss from nearly all liability, the Court is under no obligation to invalidate them when the parties have "assented without complaint to the terms of the agreement." *Royal Ins. Co. of America v. Southwest Marine*, 194 F.3d 1009, 1014 (9th Cir. 1999) (quoting *M/V American Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1488 (9th Cir. 1983)).

The Ninth Circuit has held that exculpatory clauses in maritime contracts stand on "strong footing," and "absent evidence of overreaching, clauses limiting liability in ship repair contracts will be enforced." *Arcwel Marine, Inc. v. Sw. Marine, Inc.*, 816 F.2d 468, 471 (9th Cir. 1987) (quoting *M/V American Queen*, 708 F.2d at 1488); *see also Royal Ins. Co. of America*, 194 F.3d at 1014 ("…[E]xculpatory clauses are enforceable even when they completely absolve parties from liability for negligence…"). Plaintiffs put forth no evidence that Foss has overreached. As such, the Court will uphold the validity of the exculpatory clauses. *See Marr Enterprises, Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951, 956 (9th Cir. 1977) ("The contract expressly disclaims liability for negligence. We therefore hold that these limitations are enforceable against both the tort and contract claims of [Plaintiff]."). Plaintiffs' claims are barred as a matter of law.

### D.) Plaintiffs' Request to File a Third Amended Complaint

Plaintiffs request leave to file a Third Amended Complaint adding a fourth cause of action of gross negligence. Dkt. # 32. Plaintiffs allege that on August 4, 2022,

ORDER – 10

1  Plaintiffs' counsel learned from Frank O'Hara, President of the O'Hara Corporation, that
2  Foss representatives told him that "Foss knowingly disregarded the Stern Tube
3  Installation Procedure prepared by O'Hara's naval architect…." Dkt. #33, ¶ 2. Plaintiffs
4  seek to assert that Foss intentionally disregarded explicit written instructions, resulting in
5  gross negligence, and note that they filed their Motion to Amend on the same date that
6  Plaintiffs' counsel learned this new information from Mr. O'Hara.

7  Foss opposes Plaintiffs' request because Plaintiffs filed their motion to amend
8  after the July 27, 2022 deadline to file amended pleadings and did not seek to amend the
9  parties' scheduling order. *See* Dkt. # 19 at 1 (Order Setting Trial Date and Related Dates).
10 Foss argues that Plaintiffs cannot establish reasonable diligence and good cause to amend
11 their Complaint, and further, amendment would be futile because the Contract bars a
12 gross negligence claim. Plaintiffs ask that the Court treat their motion to amend as a *de*
13 *facto* motion to amend the case schedule and note that parties to maritime contracts
14 cannot shield themselves contractually from liability for gross negligence. *See Royal Ins.*
15 *Co. of America*, 194 F.3d at 1015-16.

16 If the time for amendment as a matter of right has passed, a party may amend its
17 pleading with the opposing party's written consent or the court's leave. Fed. R. Civ. P.
18 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Under Rule
19 15, the policy favoring amendments should be applied liberally. *Johnson v. Mammoth*
20 *Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992). "[L]eave to amend should be
21 granted unless amendment would cause prejudice to the opposing party, is sought in bad
22 faith, is futile, or creates undue delay." *Id.* Between these factors, "the consideration of
23 prejudice to the opposing party [] carries the greatest weight." *Eminence Capital, LLC v.*
24 *Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In the absence of prejudice or a strong
25 showing of the other factors, "there exists a presumption under Rule 15(a) in favor of

ORDER – 11

granting leave to amend." *Id.* "Undue delay by itself [] is insufficient to justify denying a motion to amend." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999).

Once the district court has set a schedule, however, it may be modified only for good cause and with the judge's consent. Fed. R. Civ. P. 16(b)(4). The "good cause" standard under Rule 16 focuses primarily on the diligence of the party seeking the amendment. *See Johnson*, 975 F.2d at 608. A court may find good cause if the pretrial deadline "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 Advisory Committee's Notes (1983 Amendment). If a party seeks to amend a pleading after the deadline for amending pleadings in the scheduling order has passed, the party must first show good cause under Rule 16, and if successful, it must then demonstrate that amendment is proper under rule 15. *Id.*

Because Plaintiffs' proposed Third Amended Complaint is untimely under the Court's scheduling order, Plaintiffs must establish good cause under Rule 16. The Court finds that Plaintiffs cannot establish good cause because they were not diligent in seeking an extension of the Court's scheduling order (let alone seeking leave to file a Third Amended Complaint). The Court finds the timing of Plaintiffs' request to amend the complaint curious. Weeks after the parties filed their summary judgment briefing (in which Foss moved for judgment as to all of Plaintiffs' claims and both parties at least obliquely referenced Plaintiffs' ability to sustain a gross negligence claim), Plaintiffs allege that they learned totally new information that gives rise to a new cause of action—one that may or may not barred under the Contract.

Plaintiffs' allegation that in Fall 2020 Foss employees told Mr. O'Hara that in 2016 Foss knowingly disregarded written instructions is information that should have become known to Plaintiffs earlier. Given that Plaintiffs brought a negligence claim in their Complaint (Dkt. # 1), Amended Complaint (Dkt. # 7), and Second Amended Complaint (Dkt. # 23), there is no reason why Plaintiffs could not have alleged gross

ORDER – 12

negligence at an earlier date. Indeed, the parties began to engage in written discovery and third-party discovery in February 2022, around the same time that Plaintiffs filed their Second Amended Complaint. *See* Dkt. # 35, ¶ 4 (Declaration of Colin Folawn in Opposition to Plaintiffs' Motion to Amend). There is no reason why Plaintiffs could not have discovered this new information (and brought it to the Court's and Foss's attention) earlier. Either Plaintiffs were not diligent in determining whether a gross negligence claim was proper, or they are making a last-ditch effort to avoid dismissal on summary judgment. Either way, they do not meet the good cause standard. The Court therefore **DENIES** Plaintiffs' request to file a Third Amended Complaint. Dkt. # 32.

## IV.  CONCLUSION

For all the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment, Dkt. # 26, and **DENIES** Plaintiffs' Motion for Leave to File a Third Amended Complaint. Dkt. # 32. Plaintiffs' Second Amended Complaint is dismissed.

Dated this 16th day of March, 2023.

*(signature: Richard A. Jones)*

The Honorable Richard A. Jones
United States District Judge

ORDER – 13